**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOSEPH CASTILLO, *Plaintiff* | § | SA-22-CV-00472-XR |
| -vs- | § | |
| HANK SULLY LLC, *Defendant* | § | |

# ORDER

On this date, the Court considered Defendant Hank Sully LLC's motion to dismiss for lack of subject matter jurisdiction (ECF No. 10), Plaintiff Joseph Castro's response (ECF No. 11), Defendant's reply (ECF No. 17), and the parties' arguments at the hearing held on November 8, 2022. After careful consideration, Defendant's motion (ECF No. 10) is **DENIED**.

## BACKGROUND

Plaintiff Joseph Castillo filed his original complaint against Defendant Hank Sully LLC on May 13, 2022, seeking declaratory and injunctive relief, attorney's fees, litigation expenses, and costs under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). ECF No. 3.

Plaintiff is mobility impaired and uses a wheelchair. He alleges that he has been denied equal access to Defendant Hank Sully LLC's property (the "Property")—a convenience store located 1618 N Zarzamora in San Antonio Texas—on multiple occasions because of his disability, in violation of the ADA. Plaintiff alleges that the Property is located within 30 miles of his home, on a Bexar County thoroughfare "that he frequents routinely," and that he travels in and around the area where the Property is located "numerous times every month, if not every week." ECF No. 3 ¶ 11; ECF No. 8 ¶ 11.

In his original complaint, Plaintiff alleged that he had visited the Property "on multiple prior occasions, and at least once before as a patron and advocate for the disabled." ECF No. 3 ¶ 13. He was unable to fully enjoy the goods, services, facilities, privileges, advantages and/or accommodations commonly offered to able-bodied patrons of the Property, however, because of physical barriers to access, dangerous conditions, and ADA violations that preclude and/or limit his access to the Property. *Id.* ¶ 12. While he intended to revisit the Property "as soon as the barriers to access [were] removed," *id.* ¶ 13, he did "not intend to continue to repeatedly reexpose himself to the ongoing barriers to equal access and engage in the futile gesture of attempting to patronize the Subject Property, a business of public accommodation known to Plaintiff to have numerous and continuing barriers to equal access for wheelchair users," *id.* ¶ 14.

On August 10, 2022, Defendant filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that Plaintiff lacked standing to assert a claim for injunctive relief under the ADA, and, alternatively, under Rule 12(b)(6), for failure to plausibly allege that the architectural barriers caused his injuries or that their removal was "readily achievable." ECF No. 6.

Plaintiff responded by filing an Amended Complaint (ECF No. 8), mooting Defendant's pending motion to dismiss. In his Amended Complaint, Plaintiff added the following allegation as paragraph 10:

> Plaintiff has attempted to patronize the Subject Property on multiple occasions, most recently on or about August of 2022. When Plaintiff again patronized the Subject Property, he was unable to gain equal access as a disabled patron. At said visit, the barriers to entry that were present at the December 2021 visit were still present at the Subject Property.

ECF No. 8 ¶ 10. In paragraph 14 (former paragraph 13) he changed "once" to "twice" when alleging that he visited the Property "as a patron and advocate for the disabled." *Id.* ¶ 14. Finally,

he added a new paragraph 24 alleging: Plaintiff's specific intentions to continue to revisit the Subject Property as both a patron and an independent advocate for the disabled are evidenced by his August 2022 visit to the Subject Property. *Id.* ¶ 24.

On September 19, 2022, Defendant filed a motion to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6), raising the same arguments set out in its first motion. ECF No. 10. After the motion was fully briefed, the Court held a hearing on November 8, 2022. For the reasons stated in open court and as set out more fully herein, Defendant's motion (ECF No. 10) is **DENIED**.

## DISCUSSION

### I. Legal Standards

#### A. Rule 12(b)(1) – Subject Matter Jurisdiction and Standing

Defendant moves the Court to dismiss this case for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When a motion to dismiss is based on the lack of jurisdiction on the face of the complaint, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court will consider the allegations in the plaintiff's complaint as true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. CONST., Art. III, § 2. The "case or controversy" requirement defines the purview of the federal judiciary and several Article III doctrines limit which cases the federal judiciary can hear, i.e., what cases are "justiciable." *See Allen v. Wright*, 468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014).

The constitutional minimum for standing requires three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, plaintiffs must have suffered an injury in fact – an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* "Second, there must be a causal connection between the injury and the conduct complained of . . . ." *Id.* Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. Furthermore, if the plaintiff seeks equitable relief, he must also show that "there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Merely having suffered an injury in the past is not enough; the plaintiff must show a "real or immediate threat that the plaintiff will be wronged again." *Id.* at 111.

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* Each element must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Still, at the pleading stage, allegations of injury are liberally construed. *See id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990))).

**B. Rule 12(b)(6) – Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**II. Analysis**

**A. Rule 12(b)(1) - Standing**

"Any person who is being subjected to discrimination based on disability in violation of" Title III has a cause of action, but whether a plaintiff has a cause of action is a distinct issue from whether he has standing under Article III. *See Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (noting the difference between having a cause of action and standing). Because Plaintiff seeks injunctive relief under Section 12188 the ADA, he must satisfy the Article III standing requirements for injunctive relief.

Under the terms of the ADA, injunctive relief is available "to any person who is being subjected to discrimination on the basis of disability in violation of [Title III]." 42 U.S.C. § 12188(a)(1). "In the case of violations of section[] 12182(b)(2)(A)(iv) [architectural barriers] . . ., injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by [Title III]." *Id.* § 12188(a)(2). In other words, Plaintiff must establish that the architectural barriers in question pose "a real and immediate threat" that he will be subjected to discrimination again if he attempts to patronize the Subject Property. *Lyons*, 461 U.S. at 102.

"The ADA expressly recognizes that a plaintiff need not have visited an establishment or requested services if the plaintiff knows doing so will result in discrimination." *Ramos v. Uber*

*Techs., Inc.*, No. SA-14-CA-502-XR, 2015 WL 758087, at *7 (W.D. Tex. Feb. 20, 2015). Section 12188 expressly states that "[n]othing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." *Id.* Title III does not "require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188; *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011). To invoke the "futile gestures" exception, however, an ADA plaintiff must demonstrate actual knowledge of noncompliance, and to obtain injunctive relief, must demonstrate that one is being deterred by such knowledge. *Ramos*, 2015 WL 758087, at *7.

Defendant's standing argument largely relies on the Fifth Circuit's recent decision in *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269 (5th Cir. 2021). In *Laufer*, the Fifth Circuit clarified that a plaintiff's status as an "ADA tester" does not absolve the plaintiff of the need to show an injury-in-fact for standing purposes. The plaintiff, Deborah Laufer, sued the owner of the Sunset Inn, a motel in Caldwell, Texas, under the ADA, alleging that the inn's information, posted on third-party booking websites, failed to identify rooms accessible to disabled persons like her. Yet the plaintiff, a Florida resident, did not claim to have ever traveled to Texas or to have any definite plans to do so. While she did claim to have visited the motel's reservation website, she did not allege that she had tried to book a room *or even that she intended to do so*. She visited the website to see if the motel complied with the law, and nothing more. The Fifth Circuit held that the plaintiff's general intent to travel throughout Texas after the coronavirus pandemic abated was insufficient to establish an individualized injury and affirmed the district court's dismissal for lack of standing. *Id.* at 272. The Fifth Circuit further concluded that Laufer had failed to establish a

"concrete interest" in the ADA-compliance of Sunset Inn's website. "Even assuming *arguendo* that a failure to advertise accessibility information could support an ADA claim, Laufer still would need to allege at least that the information had 'some relevance' to *her*. . . . Without sufficiently concrete plans to book a stay at the motel, Laufer failed to do so." *Id.* (quotations omitted).

*Laufer* does not prohibit ADA testers from establishing standing while they are performing their work as ADA testers. Instead, it merely provides that their status as ADA testers, alone, is insufficient to establish standing, because, as "testers," their interest is no different than the public's interest in seeing that laws are enforced. In other words, a plaintiff's status as a "tester" is not disqualifying; it is *immaterial*. Testers must establish a plausible, concrete injury under the ADA independent of their status as testers.

The plausibility of a claim under the ADA—including the possibility of future harm in a claim for injunctive relief—depends in part on the type of benefit the plaintiff seeks to enjoy. Some benefits, like staying at a hotel (*Laufer*) or observing an endangered species in another country (*Lujan*), require advance planning as a practical matter. The less evidence of such planning, the less plausible it is that a plaintiff will actually suffer a future harm. Other benefits require evidence of advanced planning as a matter of law because they are subject to eligibility requirements. It is not likely, for example, that a citizen challenging an election provision under the ADA will suffer an injury to his voting rights in an upcoming election if he is not even registered to vote. Some benefits, on the other hand—including patronizing a convenience store—do not require advanced planning, practically or legally. Indeed, the notion that someone would make advanced plans to visit a convenience store on a particular date strains credulity, and requiring such a bizarre and artificial allegation to be included in all ADA complaints would do nothing, under these circumstances, to increase the plausibility of Plaintiff's claims. Instead, it would mark a return to

the hypertechnical pleading requirements that Rule 8 was intended to relax. *See Iqbal*, 556 U.S. at 678.

In short, the Court disagrees with Defendant's contention that it is implausible that Plaintiff frequently passes by and would like to patronize a convenience store located 30 miles from his home. Moreover, given his previous visit to and inability to access the Subject Property, the Court finds that Plaintiff demonstrated that he had actual notice of the architectural barriers at the time he filed suit sufficient to invoke the futile gestures doctrine. Plaintiff's "knowledge of noncompliance and the deterrence/loss of opportunity are sufficient to create an existing and ongoing ADA injury." *Ramos*, 2015 WL 758087, at *7. Accordingly, Plaintiff need not attempt or plan future visits to the Subject Property to establish standing to assert a claim for injunctive relief. He has satisfied his burden at this stage of the proceedings.

**B. Rule 12(b)(6) – Effect and Removal of Architectural Barriers**

Defendant argues that Plaintiff has failed to state a plausible claim under the ADA because the Amended Complaint does not allege any facts explaining how he was injured by the alleged architectural barriers or demonstrating that the removal of such barriers is "readily achievable." ECF No. 10 at 10–11, 13–15.

To prevail on a claim of discrimination based on an architectural barrier, a plaintiff must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable. *Greer v. EDK Allen II LP*, 2011 WL 1656406, at *3 (E.D. Tex. Mar. 8, 2011).

With respect to Plaintiff's injuries, Defendant suggests that Plaintiff has failed to allege, for example, that he suffered an injury resulting from the insufficient maneuvering clearance around the ice cooler and propane storage because "he does not allege that he wanted to buy ice or

propane." ECF No. 10 at 11. The ADA, however, expressly contemplates loss of opportunity as an actionable injury. *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 707 (W.D. Tex. 2010) (citing 42 U.S.C. § 12182(a), (b) ("it shall be discriminatory to subject an individual . . . on the basis of disability . . . to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."). Plaintiff has alleged that he "attempted to . . . access[] . . . the Subject Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein," but "could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations . . . . set forth in the Complaint." ECF No. 8 ¶ 22. This is sufficient to allege an injury resulting from the ADA violations alleged in the Complaint. *Cf. Persyn v. Torres*, No. SA-11-CV-0141 FB NN, 2011 WL 1549203, at *2 (W.D. Tex. Apr. 22, 2011) (dismissing claims for ADA violation in which the plaintiff "did not [even] identify the barrier preventing him from entering" the property at issue).

Defendant further asserts that Plaintiff's ADA claims must be dismissed because they do not plausibly allege that the removal of the architectural barriers is "readily achievable," as required under the ADA. ECF No. 10 at 13–15. Removal of an architectural barrier is readily achievable if it can be easily accomplished without much difficulty or expense. 42 U.S.C. § 12181(9). The ADA requires courts to consider four enumerated factors when "determining whether an action is readily achievable," including:

(A) the nature and cost of the action needed [ ];

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)–(D).

Given the fact-intensive nature of this inquiry, determining whether removal of an architectural barrier is "readily achievable" is best left for summary judgment. Indeed, the Ninth Circuit case Defendant cites for the proposition that "ADA plaintiffs must plausibly show how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances" addresses the proper burden-shifting framework at the summary judgment stage. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020) ("Title III of the ADA is silent as to who bears the burden of proving at summary judgment that removal of an architectural barrier is, or is not, readily achievable.").

In short, Defendant's motion is premature. The Amended Complaint alleges that the removal of the physical barriers and dangerous conditions at the Subject Property is readily achievable "because of the site conditions at the Subject Property, the structural design of the subject facility, and the straightforward nature of the necessary modifications" and because of "the relative low cost of the necessary modifications" and Defendant's financial resources, "including the financial assistance made available to Defendant by the government pursuant to Section 44 and/or Section 190 of the IRS Code." ECF No. 8 at 14–15. These allegations are sufficient at the pleading stage. *See Castillo v. Sanchez*, No. SA-22-CV-00301-FB, 2022 WL 17491313, at *4 (W.D. Tex. Dec. 6, 2022) (considering identical allegations and concluding that, "[a]t this stage of litigation, Plaintiff has alleged a plausible set of facts regarding the achievability of the removal of

the identified architectural barriers."); *see also Juluke v. Hopkins Preston Trail Plaza, L.P.*, No. 4:17-CV-00408, 2017 WL 3585425, at *2 (E.D. Tex. July 31, 2017), *report and recommendation adopted*, No. 4:17-CV-00408, 2017 WL 3582277 (E.D. Tex. Aug. 18, 2017) ("The Court finds Plaintiff's allegations survive a motion to dismiss because Plaintiff stated he encountered these architectural barriers, what these barriers are, why they are barriers, and where they are located."); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.").

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 10) is **DENIED**.

It is so **ORDERED**.

**SIGNED** February 13, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE